IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>KELVIN ORTIZ-CRUZ,<br><br>**Defendant.** | **CRIM. NO. 23-430 (RAM)** |

OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Kelvin Ortiz-Cruz's ("Mr. Ortiz" or "Defendant") *Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13(b)(B)(i)* ("*Motion for Compassionate Release*"). (Docket No. 32). For the reasons set forth below, the request for compassionate release is **DENIED WITHOUT PREJUDICE**.

I. BACKGROUND

On November 29, 2023, Mr. Ortiz waived his right to prosecution by indictment and entered into a *Plea Agreement* where he plead guilty to one count of receipt of child exploitation material, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). (Docket Nos. 1; 2 and 3 at 1-2). The count carried a statutory minimum term of imprisonment of sixty months, which the parties recommended to the Court. (Docket No. 3 at 2, 4). On March 5, 2024, the Court sentenced Mr. Ortiz to a term of sixty months'

imprisonment pursuant to the *Plea Agreement*, followed by a ten-year term of supervised release. (Docket No. 22).

On November 11, 2024, Mr. Ortiz filed his *Motion for Compassionate Release*. (Docket No. 32). Defendant claims there are extraordinary and compelling reasons for his release because: (i) he has multiple physical disabilities and medical conditions that the Bureau of Prisons ("BOP") cannot accommodate, and (ii) he has been physically attacked by other prisoners while incarcerated. Id. at 6-8. He also asserts that he does not pose a danger to the community and the 18 U.S.C. § 3553(a) sentencing factors support his release. Id. at 9-14. Mr. Ortiz filed a supplemental motion on November 20, 2024, stating that he had again been assaulted in prison. (Docket No. 35).

The Government filed its *Response* on December 6, 2024. (Docket No. 38). The Government argues that Mr. Ortiz's *Motion for Compassionate Release* should be denied as the alleged assaults are unverified, there is no extraordinary or compelling reason for a sentence reduction, he did not properly seek relief from the BOP, and his health status has not changed since sentencing. Id. at 5-12. Mr. Ortiz filed a *Reply* on December 11, 2024. (Docket No. 42).

## II. APPLICABLE LAW

Ordinarily, a court may not modify a term of imprisonment once it is imposed. *See* 18 U.S.C. § 3582I. However, it may grant

compassionate release to a defendant subject to certain requirements. 18 U.S.C. § 3582(c)(1)(A).

Pursuant to § 3582(c)(1)(A), a court may not modify a final sentence unless a defendant has "fully exhausted all administrative rights to appeal a failure of" the BOP to bring a motion for reduction of sentence on his behalf or if thirty days have elapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Id. Even if these conditions are met, the district court must consider "the factors set forth in § 3553(a) to the extent that they are applicable," and there **must still be** "extraordinary and compelling reasons" warranting the proposed reduction. 18 U.S.C. § 3582(c)(1)(A)(i); see also United States v. Saccoccia, 10 F.4th 1, 4 (1st Cir. 2021) (providing general principles for evaluating compassionate release motions). The defendant bears the burden of establishing that extraordinary and compelling reasons exist, that he is no longer a danger to the community, and that the § 3553(a) factors favor release. United States v. Galiany-Cruz, 2023 WL 6458535, at *1 (1st Cir. 2023); United States v. Miranda-Rojas, 2023 WL 7181650, at *1 (1st Cir. 2023).

The United States Sentencing Commission's ("USSC") policy statement on motions for compassionate release initiated by prisoners provides further direction. See U.S.S.G. § 1B1.13. Following the USSC's guidance, "district courts addressing such

Case 3:23-cr-00430-RAM   Document 44   Filed 01/23/25   Page 4 of 18

Criminal No. 23-430                                                    4

motions not only will be bound by the statutory criteria but also will be required to ensure that their determinations of extraordinary and compelling reasons are consistent with that guidance." United States v. Ruvulcaba, 26 F.4th 14, 23-24 (1st Cir. 2022). The First Circuit expects district courts "to take heed of" the new policy statement when determining whether a defendant is eligible for compassionate release. United States v. Rivera-Rodríguez, 75 F.4th 1, 18 n.22 (1st Cir. 2023).

The policy statement outlines six circumstances that individually or in combination may constitute extraordinary and compelling reasons warranting relief: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether defendant was a victim of abuse while incarcerated; (5) "other reasons" similar in gravity to the preceding four reasons; and (6) whether the defendant received an unusually long sentence. U.S.S.G. § 1B1.13(b). The Guidelines do not require that an extraordinary and compelling reason was "unforeseen" at the time of sentencing to warrant a sentence reduction. U.S.S.G. § 1B1.13(e). Additionally, a court must determine that the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2).

In the context of § 1B1.13(b)(1)(B)(i), a sentence reduction may be justified when a defendant "is suffering from a serious

physical or medical condition" that "substantially diminishes" his ability to "provide self-care within the environment of a correctional facility" and from which he "is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B)(i). The BOP's most recent guidance on compassionate release provides further information on what qualifies as a serious physical or medical condition: "'It is when the defendant either has an "incurable progressive illness or has suffered a debilitating injury from which he will not recover'; is 'completely disabled, meaning the defendant cannot carry on any self-care and is being totally confined to a bed or chair'; or is 'capable of only limited self-care and confined to a bed or chair more than 50% of waking hours.'" United States v. Lisi, 440 F.Supp.3d 246, 251 (S.D.N.Y. 2020) (reading the BOP guidance to find that a defendant's medical condition "must be one of substantial severity and irremediability" to qualify for compassionate release). *See also* United States v. Israel, 2019 WL 6702522, at *2 (S.D.N.Y. 2019) (considering the BOP guidance).

### III. DISCUSSION

As a threshold matter, it appears that Mr. Ortiz has satisfied the administrative exhaustion requirement of § 3582(c)(1)(A). His *Motion for Compassionate Release* states that his request to the BOP for a sentence reduction has gone unanswered for more than thirty days. (Docket Nos. 32 at 5 and 32-4). The Court therefore proceeds to evaluate the merits of the *Motion for Compassionate*

*Release*. *See* <u>United States v. Quirós-Morales</u>, 83 F.4th 79, 84 (1st Cir. 2023); <u>United States v. Texeira-Nieves</u>, 23 F.4th 48, 53 (1st Cir. 2022) (holding the administrative exhaustion requirement is a "non-jurisdictional claim-processing rule").

The Court denies Mr. Ortiz's *Motion for Compassionate Release* for two reasons. First, he fails to present extraordinary and compelling circumstances that would justify release. Second, he has not shown that release is warranted given the factors set out in 18 U.S.C. § 3553(a). The Court does not decide whether Mr. Ortiz presents a danger to the community at this time.

**A. Defendant does not present extraordinary and compelling circumstances justifying release.**

Mr. Ortiz offers his physical and medical conditions as justification for compassionate release pursuant to U.S.S.G. § 1B1.13(b)(1)(B)(i) and 18 U.S.C. § 3582(c)(1)(A)(i). However, the Court does not find these conditions to be "extraordinary and compelling" as contemplated by § 1B1.13(b)(1)(B)(i).

*i. Mr. Ortiz's health conditions*

Mr. Ortiz has radial club hands, a congenital birth anomaly that limits his ability to use his hands, and a curvature of the spine that leaves one leg longer than the other, causes a hobble, and makes walking long distances or running "uncomfortable and challenging." (Docket Nos. 11 ¶ 62 and 32 at 7-8). He is four feet, eleven inches in height, and weighs eighty-nine pounds. (Docket

No. 32 at 8). Mr. Ortiz also has chronic asthma; atopic dermatitis; psoriasis; and allergies to pollen, humidity, gluten, wheat, seafood, condiments, artificial food coloring, fragrances, parabens, and other triggers. (Docket No. 11 ¶ 63). He experiences anxiety, depression, and panic attacks. (Docket No. 32 at 7).

Mr. Ortiz argues that the BOP is unable to accommodate his various disabilities and ailments. He requires a special diet because of his wheat allergy and claims that the BOP does not provide him with dietary accommodations. Id. Mr. Ortiz reports that he has lost twenty-one pounds while incarcerated because of the purported lack of accommodations. (Docket No. 32-4). Due to his height, he does not have prison overalls that fit and wears oversized shoes stuffed with toilet paper rather than smaller, orthopedic ones. (Docket No. 32 at 7). He has difficulty walking the 280 meters from his unit to the prison medical center. Id. He is not tall enough to turn the prison showers on or off and must jump or ask for assistance to do so. Id. Other hygiene-related activities are difficult due to his physical disabilities. Id. at 3. Mr. Ortiz also requires "preventative, long-term medication" for his chronic asthma, anxiety, depression, and panic attacks. Id. However, he refuses to take "psychotropic drugs treatment" that would help his anxiety, depression, and panic attacks because he fears the medication's side effects would leave him unable to defend himself if he is attacked by other prisoners. Id. at 7-8.

Supporting his fear of future attacks, Mr. Ortiz lists three incidents where he was allegedly assaulted by other inmates. (Docket Nos. 32 and 35). First, on August 28, 2024, he claims he was assaulted and left with a bruised face and shoulder pain. (Docket No. 32 at 1). Second, on September 25, 2024, he claims he was punched and threatened, resulting in chest pain. Id. at 2. Third, on November 14, 2024, he claims he was pushed and punched by a cellmate who made comments about his disability and threatened him not to report the incident. (Docket No. 35 at 1). Mr. Ortiz claims he has experienced insomnia since these assaults and did not report them to BOP staff because he feared retaliation from other prisoners, instead saying he was injured in a fall. (Docket No. 32 at 1-2, 4). Due to his disabilities and physical appearance, Mr. Ortiz argues he is especially vulnerable to abuse in prison and has received numerous threats to this effect. Id. at 8.

  ii.  *Applicability of § 1B1.13(b)(1)(B)(i)*

Compassionate release "due solely to a medical condition" is "'an extraordinary and rare event' granted only in cases of notable severity." United States v. Rivera-Vazquez, 2024 WL 4601338, at *4 (D.P.R. 2024); *see also* Saccoccia, 10 F.4th at 5 ("not every complex of health concerns is sufficient to warrant compassionate release".). Here, the Court knew of Mr. Ortiz's medical and physical conditions at sentencing and still set a sixty-month term of imprisonment. (Docket Nos. 11; 23 and 24). Although the Court's

previous knowledge of Defendant's health issues does not preclude their reevaluation here, other courts have considered what courts knew at sentencing when determining whether compassionate release is proper. U.S.S.G. § 1B1.13(e). *See* United States v. Rivera, 2024 WL 3329127, at *2 (D.Mass. 2024) (no extraordinary and compelling reasons when the court knew of the defendant's physical condition at sentencing and "nonetheless determined that the sentence imposed was warranted."); Rivera-Vazquez, 2024 WL 4601338, at *4. The Court now turns to the specific issues brought by Mr. Ortiz.

First, Mr. Ortiz has multiple physical disabilities that limit his mobility and range of motion, especially in his arms, which he claims the BOP cannot or will not accommodate. (Docket Nos. 11 and 32). However, the record is clear that Mr. Ortiz's disabilities are not debilitating in the sense that he is unable to function within the confines of prison, even if this is at times inconvenient or requires the assistance of others. *See* United States v. Mohammed, 2024 WL 2701639, at *2 (E.D.N.Y. 2024) (defendant did not satisfy § 1B1.13(b)(1)(B)(i) when a hand injury was not "life-ending or otherwise debilitating" but did "require[] help from other inmates" and left the defendant "unable to complete mundane tasks."). Medical records submitted by Mr. Ortiz indicate that he is receiving medical care from BOP personnel. (Docket No. 32-1; 32-2 and 32-5). This includes a March 2024 "chronic care visit" where a physician placed orders for orthopedic shoes in Mr.

Ortiz's size and an EKG. (Docket No. 32-5 at 1). His *BOP Individualized Needs Plan – Initial Classification* further cuts against his claim that BOP accommodations are insufficient, as the plan lists apparent accommodations, such as a lower bunk bed assignment, and notes a judicial recommendation telling the BOP to "take notice of defendant's serious medical conditions." (Docket No. 32-6). The Court is not persuaded that Mr. Ortiz's difficulties satisfy the exacting "extraordinary and compelling" standard. U.S.S.G. § 1B1.13(b)(1)(B)(i). *See* United States v. Casey, 2019 WL 1987311, at *1-2 (W.D.Va. 2019) (no extraordinary and compelling circumstances when the defendant could not use stairs, had limited mobility, and required a walker). *Cf* United States v. Willis, 382 F.Supp.3d 1185, 1188 (D.N.M. 2019) (extraordinary and compelling medical conditions existed when a defendant had at most eighteen months to live based on medical complications including arterial dissections, severe coronary artery disease, strokes, Parkinson's disease, diabetes, hypertension, and kidney hemorrhage); United States v. Dimasi, 220 F.Supp.3d 173, 185 (D.Mass. 2016) (extraordinary and compelling circumstances existed when a defendant's esophagus narrowed during his incarceration and left him at risk of aspiration pneumonia and choking).

Second, Mr. Ortiz notes that he has chronic asthma, but his *Motion for Compassionate Release* does not specify its severity beyond stating that he requires "continuous treatment" for this

condition. (Docket No. 32-4 at 1). The *PSR* states that Mr. Ortiz needs a "respiratory therapy machine with albuterol" by his bed "in case he suffers an asthma attack while sleeping." (Docket No. 11 ¶ 63). While his *Sentencing Memorandum* describes his asthma attacks as "life-threatening" if untreated, his medical records do not discuss this condition.[1] (Docket Nos. 18 at 6; 32-1; 32-2; 32-3 and 32-5). Importantly, Mr. Ortiz never argues that his chronic asthma "would either prevent him from providing self-care or is not being managed [by the BOP]" beyond a vague assertion that he lacks "proper medical care," something that has resulted in denial of compassionate release for asthma previously. United States v. Figueroa-Gibson, 2024 WL 376432, at *5 (D.P.R. 2024) (denying compassionate release for an asthmatic defendant in the Covid-19 context); *see also* United States v. Vargas-Torres, 2024 WL 2186525, at *2 (D.P.R. 2024) (same); United States v. Ayala-Martinez, 2022 WL 13946049, at *3 (D.P.R. 2022) (same); United States v. Person, 510 F.Supp.3d 1, 2 (D.Mass. 2021) (same). The Court finds Mr. Ortiz's chronic asthma is not a medical condition that justifies compassionate release. U.S.S.G. § 1B1.13(b)(1)(B)(i).

Third, Mr. Ortiz reports that he has a litany of food allergies, most notably a wheat allergy that requires a gluten-free diet. (Docket Nos. 32 and 32-4). He claims the BOP has not

---

[1] The Court notes that the medical records at Docket Nos. 32-1 and 32-2 appear incomplete, leaving it unable to determine the seriousness of Mr. Ortiz's asthma and the level of care provided by the BOP.

provided dietary accommodations, resulting in him having lost twenty-one pounds while incarcerated. (Docket Nos. 11 ¶ 63; 18 at 5 and 32-4 at 1).[2] The severity of Mr. Ortiz's allergies is described as "life-threatening" in his *Sentencing Memorandum*, however his *Motion for Compassionate Release* does not provide further elaboration on his requested accommodations, the BOP's alleged refusal to accommodate him, or what he has been consuming in the meantime. (Docket Nos. 18 at 1 and 32). Without a showing that Mr. Ortiz's allergies have "substantially diminishe[d]" his ability to provide self-care while incarcerated, his allergies are not extraordinary and compelling. U.S.S.G. § 1B1.13(b)(1)(B)(i). *See also* United States v. Kindambu, 2023 WL 159767, at *3 (E.D.Va. 2023) (no extraordinary and compelling circumstances when the defendant could not go on a diet for his diabetes, refused to eat in response, and lost nearly thirty pounds); United States v. Stevens, 459 F.Supp.3d 478, 487 (W.D.N.Y. 2020) (compassionate release denied after defendant raised various grounds for relief, including "unavailability of a proper diabetic diet"); United States v. Dixon, 2024 WL 725885, at *1 (2d Cir. 2024) (no abuse of discretion for denying a compassionate release motion when one of the grounds for release was the lack of a low-fiber diet for the defendant's ulcerative colitis).

---

[2] However, as noted previously, some medical documents provided by Mr. Ortiz are missing pages, leaving this Court unsure of what measures the BOP has taken towards his allergies. (Docket Nos. 32-1 and 32-2).

Fourth, Mr. Ortiz suffers from anxiety, depression, and panic attacks, but does not elaborate on the impact these disorders have on him beyond stating they negatively affect him and make his time in prison more difficult. (Docket No. 32 at 4, 8). Importantly, he has voluntarily refused further medication for these conditions while incarcerated, preventing him from relying on these conditions to obtain compassionate release. Id. at 7-8. See United States v. Pacheco-Montemoino, 2022 WL 897124, at *3 (D.P.R. 2022) (defendant's refusal to take medication for health conditions meant that he could not use these conditions as a basis for compassionate release); United States v. Colmenares Fierro, 2021 WL 28006942, at *6 n.6 (E.D. Tex. 2021) (same). As Defendant has not shown either: (i) "he cannot perform self-care due to his mental health conditions," or (ii) "that the medical treatment he has received is insufficient," his anxiety, depression, and panic attacks are not extraordinary and compelling reasons for compassionate release. Figueroa-Gibson, 2024 WL 376432, at *5.

Fifth, Mr. Ortiz alleges that he has been assaulted three times in prison by other inmates, apparently due to his physical appearance. (Docket Nos. 32; 35 and 42). He claims he has sought medical care twice for shoulder and facial pain but told medical personnel he was injured in a fall because he was afraid of retaliation from other inmates. (Docket No. 32; 32-1; 32-2; 35 and 42). However, Mr. Ortiz does not persuasively connect these alleged

assaults to any extraordinary and compelling reasons found at § 1B1.13(b). He does not offer, and the Court has not found, any case law suggesting that the level of harm he has allegedly experienced from other prisoners qualifies for compassionate release under § 1B1.13(b)(1) or § 1B1.13(b)(5). Assuming Mr. Ortiz's assertions are true, they do not satisfy the exacting requirements for compassionate release. *Cf* United States v. Griffin, 2024 WL 2891686, at *3-4 (E.D.N.Y. 2024) (extraordinary and compelling circumstances existed when a defendant was beaten by three other inmates and suffered an orbital fracture, eye laceration, and facial swelling and bruising, did not receive sufficient medical care, and was seeking a two-week sentence modification).

In sum, the Court concludes that Mr. Ortiz has not provided extraordinary and compelling reasons justifying compassionate release. U.S.S.G. § 1B1.13(b).

**B. Defendant has not shown that the § 3553(a) factors warrant his release.**

The Court need only consider the § 3553(a) factors if it has found an extraordinary and compelling reason justifying release. Saccoccia, 10 F.4th at 8; Texeira-Nieves, 23 F.4th at 52. However, providing this analysis can aid a reviewing court. *See* Saccoccia, F.4th at 8. Each factor does not need to be "tick[ed] off" by a district court, and it is presumed that factors "not specifically

mentioned were simply unpersuasive." Id. at 10 (citation omitted). Of relevance in this case given the parties' submissions are the nature and circumstances of the offense, the history and characteristics of the defendant, and the sentence imposed. *See* 18 U.S.C. § 3553(a)(1)-(2).

> *i. Nature and circumstances of the offense and the history and characteristics of Defendant*

Mr. Ortiz was convicted of one count of receipt of child exploitation material, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). (Docket Nos. 2 and 3 at 1-2). Specifically, as detailed in the *PSR*, he attempted to engage in sexual activity with an undercover officer whom he believed was a thirteen-year-old girl, despite having repeatedly been informed of the would-be minor's age. (Docket No. 11 at 4-9). Sex crimes involving minors horrifically victimize some of the most vulnerable members of society. Accordingly, some courts have rejected compassionate release in cases involving defendants who abuse or attempt to abuse children. *See*, *e.g.*, United States v. Cates, 2020 WL 6136212 (D.Me. 2020) (denying compassionate release to defendant in child pornography case with a prior history of sexual conduct with minors); United States v. Tinsley, 2021 WL 5084691 (D.Md. 2021) (declining to reduce sentence of defendant who committed "undeniably serious" offense of trafficking a fifteen-year-old girl).

Regarding his history and characteristics, Mr. Ortiz did not have a criminal record prior to his arrest, has accepted responsibility for his actions, and regrets the impact his arrest and conviction have had on himself and his family. (Docket Nos. 11 ¶¶ 35, 45-46, 48-55 and 32 at 12-13). He is a talented musician and appears to maintain close bonds with his family, particularly his mother. Id. at 13-14. The Court also notes that he complied with the terms of release prior to sentencing, which favors compassionate release. Id. at 13. See, e.g., United States v. Gravens, 2020 WL 7390514, at *9 (D.S.D. 2020) (granting sentence reduction to "model inmate" defendant with no criminal history, when other factors also favored release).

   *ii. The sentence imposed*

Section 3553(a) also "instructs courts to consider the need for the sentence imposed to, among other things, 'reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.'" Figueroa-Gibson, 2024 WL 376432, at *7; 18 U.S.C. § 3553(a)(2). Mr. Ortiz argues he needs rehabilitation, not incarceration, and is ill-suited for life in prison due to his physical state. (Docket No. 32 at 13). He also proposes a post-release plan where he will live with his mother, attend sex-offender treatment, and continue working as a percussionist. Id. at 13-14.

The Court is not persuaded by Mr. Ortiz's arguments. Congress' imposition of a five-year mandatory minimum sentence for Defendant's offense of conviction is "instructive insofar as it indicates the kind of sentence that Congress believes to be necessary to reflect the seriousness of defendant's conduct." Tinsley, 2021 WL 5084691, at *16. Here, Mr. Ortiz has only served ten months of a sixty-month sentence. (Docket No. 38 at 2). *Cf* United States v. Daham, 2021 WL 279971, at *4 (D.Me. 2021) (granting compassionate release when the defendant had two months remaining on a three-year sentence). His current term of imprisonment results from serious criminal activity that demonstrated a marked disregard for the law and the well-being of others. Additionally, the actual term of imprisonment is one Mr. Ortiz agreed to in his *Plea Agreement*, which is the statutory minimum sentence of imprisonment. (Docket No. 3 at 2, 4).

There is also great social value in deterring Mr. Ortiz and others from engaging in similar behavior in the future. Granting compassionate release to Defendant now would undermine the seriousness of his offenses, fail to promote respect for the law, and not provide just punishment for his offense. 18 U.S.C. § 3553(a)(2). Furthermore, reducing Mr. Ortiz's sentence below the mandatory minimum term of imprisonment could cause unwarranted sentencing disparities. United States v. Salinas-Acevedo, 2021 WL 5919786, at *3 (D.P.R. 2021) (finding that reducing sentence below

mandatory minimum would be inappropriate under § 3553(a)(2) and would cause a sentencing disparity under §3553(a)(6)). Weighing the § 3553(a) factors, the Court determines that the balance of relevant factors cuts against granting Mr. Ortiz's *Motion for Compassionate Release*, even if the other requirements for compassionate release had been satisfied.

## IV. CONCLUSION

For the foregoing reasons, Defendant Kelvin Ortiz-Cruz's *Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13(b)(B)(i)* at Docket No. 32 is hereby **DENIED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 23rd day of January 2025.

                                        s/Raúl M. Arias-Marxuach
                                        UNITED STATES DISTRICT JUDGE